It's against Waldrop. Ms. Gambino. Good morning Chief Judge Wood, Judge Ravner, and Judge Kaney. I'm here on behalf of Mr. Waldrop seeking redress for a miscarriage of justice that occurred in his case. At issue in this appeal are two different aspects of what happens when the case alleges a violation of 841 B1c which requires that if death results from drug use or distribution that a mandatory minimum of 20 years imprisonment results. And we raised the... How do we get around the waiver problem here? Because it seems clear from defense counsel's statements to the court and to the jury that Mr. Waldrop was making a causation of the offense at trial. So how do we get past that? Your Honor, it would be my position at this point that there still is a plein air ability to review this. That in this particular case if we were resting simply on the stipulation at trial and the words of counsel that that would be one thing. However, there was evidence elicited both from direct and across examination which indicated that the individual who died had consumed large quantities of alcohol, had also other drugs in her system, and so a jury could have concluded from that that it simply wasn't a but-for cause of her death. They're not required to accept stipulations. They can take them as any other evidence and evaluate it. So even if... But in moving for a judgment of acquittal, his attorney affirmatively stated that the defense was not challenging the notion that the heroin caused Sweeney's death. And of course that was after the stipulation to what the pathologist and the forensic toxicologist would testify. So it seems awfully clear that a conscious decision was made not to dispute that the to understand why, you know, you're not precluded from making, you know, the argument now. Judge, it's our view that the attorney's assertions at the time of the Rule 29 motion are not necessarily dispositive when you have a fundamental miscarriage of justice and when there is plein air. And certainly in this particular case, where there was evidence that contradicts what the position that he took at that time and was not clarified, that the court could review this using the plein air standard. And with respect to that, that whole... This case turns around what happened in fact, Mr. Waldrop, and if you look at the particular provision of the statute in his case, it is our position that it's an unconstitutional application because it violates fundamental due process and the Eighth Amendment's requirement that that punishment be proportional. No, I just don't see that against the backdrop of the fact that he certainly did something that was that he knew, well, it was clearly against the law. He sells heroin. He sells two doses of heroin in this instance to the two people. And what we're talking about really is whether, having done that, you know, he unfortunately sold the heroin to a very vulnerable person. Somebody who hadn't been taking heroin for the last 13 years was obviously much more susceptible to it than a The vulnerability of the victim isn't something that makes what he did okay or whatever. It's a risk, he assumes, just as if he uses a minor. It just is a number of other things. So I don't see the terrible disproportion that the Supreme Court would actually say runs into the Eighth Amendment going on here. Well, Your Honor, if you look at it, first of all, from the context of what's going on with the application of this penalty, it's done on a strict liability basis. Well, you say strict liability in your brief, but I'm trying to push back on that and say, no, he's found criminally responsible for selling heroin, which is a controlled substance, and what's happening is that the statute says if you sell it to somebody who's so particularly vulnerable that they actually die from it, we're going to punish you more severely. Well, the problem with that approach, Judge, Your Honor, in this particular case or in any case, basically, is that it's not the same thing as enhancing a person's sentence for use of a minor or doing something along that line, which increases modestly the penalty that somebody faces. What we're doing here is we're saying, okay, he's been convicted of distributing a controlled substance, and typically that's punished according to the amount. No, I know it's a big difference. I don't disagree. Right, and if you look, and that's part of the reason that takes it out of the realm of these other enhancements, because you're taking a drug offense and you're punishing as if it were an intentional murder. Well, you're going from about 20 years, right, from two years to 20, give or take, right? That's correct. You're punishing this offense as if he had intentionally killed someone without requiring that he had either the intent or the knowledge or any other scienter with respect to the impact that what he was doing. So why can't Congress do that? Why can't Congress say, if you sell a controlled substance and it results in somebody's death, and there are some 10,500 such deaths a year in our country, it's not a small problem. We're going to punish you. I mean, it's at least reckless. It's a lot, and we're going to punish you severely. Because in order to, our common law tradition is that when you take something like murder or an incident causing death, there's a scienter requirement. There's a mens rea requirement, and here you're obliterating that altogether. Only on the death part, you know, we, just as we don't require people to know that you're a minor. Well, that's the significance of it, the death part, because that's what... But the minor part is the significant part, too. That causes an uptick in the sentence. It causes an uptick. It doesn't cause a mandatory minimum of 20 years, and it doesn't cause... Didn't the Fourth Circuit hold just what Judge Wood indicated, that the statute itself put you on notice? That's what they said, but I think it's not... I know it's what they said. That's the holding, but I think it's not necessarily clear, because if that were to be clear, that every person who takes heroin or any other drug is going to be at risk of death, then that would make some sense. But that's not the case here, and you have two different categories of individuals that you might want to... that you could conceivably punish differently when you're talking about heroin. Well, some subset of people are, in fact, at risk of death, whether it's because they're especially sensitive to it, or because maybe there's some adulteration in the product that the But now it's even... even the issue in Chicago issue, police officers antidote for heroin overdose because of that problem. That's correct, they do, Your Honor, and in fact this case, one of the... one reason, or one of the great highlights of the disparities in this case, is that the young man who actually was responsible for administrating the heroin to this woman, who left her to die, who stole her property, who went on selling her things, and all that kind of thing, a young white man, I might add, was not punished under this statute in the same way that Mr. Waldrop, who was merely a fellow user... He cooperated, right, Wilson? Yes, he did. Yeah, well, I mean, so that happens a lot where we see this, and one could have a long debate about whether that's appropriate or not, but normally if you cooperate, you get a smaller sentence. It certainly highlights the arbitrariness of who gets offered the opportunity to cooperate, who doesn't, who doesn't, how that person is chosen, because what we have in this case is the person who's more morally culpable, serving half the time, of the person who is clearly less culpable in the chain of events. And you also, the statute says... Well, not a fellow knowingly and intentionally distributes a drug that she died, so... The other problem, Your Honor, I appreciate that, but you're setting... This statute sets up another possibility for incredible disparate treatment of similarly or dissimilarly situated defendants, because you have two categories of people. You have the people who are the actual source of the heroin, who know what goes into it, what's cut into it, whether it presents at higher risk because it has fentanyl or some other poisonous additive, and those people who are deliberately distributing a substance like that, they may very well want to hold to a strict liability, but someone like Mr. Waldrop, who is a user, like any other user, is not the source, doesn't know how it's prepared, and simply passes along what somebody else has given to him, is punished more severely than any anybody else in the case. And that sets up a situation where you have not only disproportional punishment, but equal protection concerns, because you do have the case where the actual source is not punished at all. Okay, I think you need to wrap up. I'm sorry, I see my time is up, and thank you very much. All right, thank you. Mr. Walters. Good morning, Your Honors, and may it please the Court, I'm Greg Walters, and I represent the United States. If I could start with just addressing this alleged equal protection argument that she raised below, doesn't raise on appeal, and then brings up again an oral argument. As far as this disparity and the hackneyed reference to the white man being treated differently, I would note it may or may not be in the record, but we were trying to work up the chain of distribution. The original person that distributed the drug or injected the decedent, he was prosecuted under death results provision. I would suggest that Mr. Waldrop was offered the same potential to cooperate and didn't do so. So Mr. Wilson was also result of his cooperation. So Mr. Waldrop didn't want to cooperate or had nothing to offer? I didn't, well, I think he had something to offer because we had a good idea of where he was getting his drugs from. I wasn't the line AUSA on the case to know exactly what was offered cooperation-wise, but this whole equal protection argument was already addressed by the District Court and then wasn't even raised on appeal. So, well, the big debate here, I mean, it is a huge jump, right? For distributing 0.2 grams of heroin, all of a sudden you're looking at a 20-year mandatory minimum sentence and we've been concerned about excessive sentences in many contexts and no one thinks that Mr. Waldrop had the faintest idea when he sells this tiny amount of heroin, two doses I suppose, that all of a sudden he's essentially a murderer. I agree and I think these, I agree in the sense these cases present difficult choices, not only for the individuals that are involved in the criminality, but they present difficult choices for prosecutors because we are dealing with, and I with regard to opioid abuse. Waldrop was Wilson's regular supplier of heroin. According to the record, yes. I mean, Mr. Wilson had other suppliers, but Waldrop was a regular supplier. So I appreciate the difficulty that this presents as far as, you know, what is quote fair, but I also... He was buying daily from Waldrop. According to the testimony, he was, Your Honor. What I want to point out too is a standard of review that we're on before this court, which is playing air on both of these constitutional issues that have been raised and there is yet to be a mention in the brief or in reply of what is the clear law from which the district court deviated that would show that this is a which is an exceedingly rare successful claim before any court. Outside of the death penalty, that's true. Right, that's right. Right. Outside of a capital case. So, and again, the due process that this is so vague that it didn't place a person of normal intelligence on notice or the fact that there's no mens rea element, I'm not sure how that ties in with due process or at least a clearly erroneous application under the statute or plainly erroneous unconstitutional application of the statute when the Supreme Court has stated that it is not uncommon to punish people for the unintended consequences of their crime. We even see it in the context of the sentencing guidelines and I think of an example, somebody has a meth lab. They don't intend to blow up the house, but there is a significant increase that can happen under the guidelines. It's not a mandatory minimum penalty, but there are increases that happen under our guidelines, sentencing guidelines, that courts apply that deal with unintended consequences. In this case, Congress has chosen to impose a mandatory minimum based on what is an unintended consequence. There's no suggestion that Mr. Waldrop intended to kill this victim, but Congress has chosen to impose that particular punishment and it does not fail under either the Eighth Amendment or the Due Process Clause. If I could first then come back to, I think Judge Roper's very initial question is, why is this not waiver? And the fact is... The first part of the argument. Yes, the first part of the argument and the fact is, it is waiver. This is an intentional relinquishment of a known right. He could have challenged that element at the Rule 29 stage, and he intentionally told the judge through counsel that we are not challenging that element. That is much different than forfeiture, and I think there's also a tactical reason for doing that, because it allows counsel, as part of his strategic decision, to focus on those elements that he or she believes need to be contested at trial, or if they have the best opportunity to contest and find a verdict or obtain a verdict of not guilty. I take it that they focused on the theory that Waldrop wasn't the one who sold these doses, is that correct? It was, and some of the evidence that was admitted at trial included testimony and records that Mr. Wilson actually attempted to contact a number of drug suppliers before he got a hold of Mr. Waldrop. And so I think the inference being that it was somebody else other than Mr. Waldrop that supplied. There was other evidence that certainly contradicted that, along with phone records, GPS... Or not GPS, but cell site locator evidence, and then the testimony of Waldrop himself. But ultimately, the jury did find that he was the one that distributed it. But what we would like to have the court hold is that there is waiver, and by doing so, really address what I think is a confusing case in United States versus Wray, to on the one hand state that there is waiver, but then to have analyzed the sufficiency argument under a plein air standard. And as we suggested in our brief, the government very well may have been the cause of that and the way that that issue was framed on appeal in Wray. But it's clear when someone stands up and says, we're not challenging this. It's very similar to saying, judge, we're not objecting to this jury instruction. Or judge, here's a jury instruction we're offering that looks just like the government's. And then to turn around on appeal and argue that that is not waiver, it's just inconsistent with waiver principles. And so first, it's waived. But then let's just come back to the issue then. Even if it's not waived, we're here either on plein air or at best, for Mr. Waldrop, the de novo standard. When you have doctors stipulate a testimony of a forensic pathologist and the... Well, you've got the two who both say what Burrage... Right. Says you need to say. It's hard to say that there isn't sufficient evidence from which a reasonable juror could find on that element. And the other thing that's confusing, that can be confusing, is to be clear, the fact that things were omitted from that stipulation about some level of alcohol in urine or... Well, there was quite a cornucopia of substances in her. Well, two, three primarily, diazepam, which is like a valium type, alcohol, and then you have the heroin metabolites and the acetylmorphine. But the standard is a but for cause. Not the but for cause. So there can be, I think it's acknowledged in Burrage and maybe even by this court in Hatfield, there can be multiple but for causations. That's the whole purpose behind the but for test, is that even Burrage came before the Supreme Court as a toxic combination of both heroin and then some other drug that was obtained from a different source. And so that's what the but for standard addresses. And along with that, there is confusion, I think, in the defense brief on the two different standards and overlapping them, but for cause or independently sufficient. That's an either or. And as this court noted in Gaylord, United States against Gaylord, that actually the independently sufficient causation nexus is very rare. That deals with the hypothetical of A shoots X, B stabs X. They're both fatal wounds towards X. They can both be held independently liable for murder. And so that's a very unique circumstance for independently sufficient, that 99 times out of 100, it will be the but for standard that applies. And that's what applies in this case. The stipulation supports it. Absent waiver under either the plein air standard or the de novo standard. The government prevails on this appeal. And so we would ask that this court affirm the judgment of the district court. All right. Thank you very much. Ms. Gambino, your time ran out, but if you have one minute's worth of other things to say, I'll give it to you. Thank you, Judge. I think it's pretty important to remember, especially in the sentencing context, with regard to proportionality, that in the cases where the court has upheld proportionality, it's been in the context or disproportionate, grossly disproportionate sentences. It's been in the context of enhancements based on somebody's prior criminal history. Something over which they have control and over which they have some knowledge or scienter around. And if you're going to punish the defendant as if he has committed murder, then it should probably be charged that way and be found to have some kind of mental state that supports it. And it's certainly an end run around the burden of proof to say that a person can be charged and convicted of a drug offense, a rather small drug offense, and held responsible as if he was a murderer. So for those reasons, we would ask that the case be reversed and remanded. All right. Thank you. Thanks to both of you. We will take this case under advisement.